[Civ. No. 19549.   First Dist., Div. Three.   Jan. 18, 1962.]

DONLON J. ARQUES, Plaintiff and Appellant, v. STATE OF CALIFORNIA, Defendant and Respondent.

Wallace S. Myers for Plaintiff and Appellant.

Holloway Jones, Jack M. Howard, John H. Tallett, Robert J.DeFea, James T. Johnson and Robert E. Reed for Defendant and Respondent.

DRAPER, P. J.—Although several defendants were sued, this case went to the jury as an action in inverse condemnation against the state only.  The jury returned a special verdict answering "no" to the question "Was the real property of the plaintiff . . . damaged by the defendant State of Cali-

fornia for a public use?'', and returned a general verdict for defendant. Plaintiff appeals from the judgment then entered.

Plaintiff owned some 22 acres of land along the Sausalito waterfront and extending some distance easterly below the waters of San Francisco Bay. The property was used for ship building purposes (Marinship) during World War II, and its 14 acres of submerged land included slipways and a channel leading to a turning basin. To the west of plaintiff's land, foothills rise sharply, constituting a watershed of some 156 acres, which drains into the bay over his property. The Waldo approach to the Golden Gate Bridge crosses this watershed. Built in 1937, this portion of Highway 101 was widened and improved by contract under which work began in the fall of 1953 and continued to March 22, 1955. In the course of such work, additional cuts and fills were made along the Waldo grade. In the winter of 1955-1956 rainfall was heavy. Plaintiff asserts that as a result of the highway improvement work and the loose earth left by it, erosion was much greater than normal, so that some 20,000 cubic yards of material were carried into plaintiff's submerged land. He asserts that, when saturated in the bay, the volume of this deposit increased to some 40,000 cubic yards and destroyed the usefulness of his property for ship repair and salvage operations.

The state concedes that there has been a substantial decrease in depth of water over plaintiff's submerged land, but asserts that it does not result from deposit of material from the highway cuts and fills.

Plaintiff asserts insufficiency of the evidence to support the verdicts. There is testimony to support his view that the construction work caused filling of his land. But there is direct evidence that the raw land left by the construction work was little eroded after the rains, and that the total loss of earth from such slopes, even if all of it reached plaintiff's land, could cause no damage. The jury visited the scene and viewed the slopes. There is also evidence that the filling of plaintiff's submerged land resulted from ''shoaling'' of the floor of the bay, a condition which witnesses testified was constant and was unrelated to runoff of material from the watershed. Plaintiff's argument amounts to no more than an appeal to this court to review the evidence and redetermine its weight. It would be an act of supererogation to cite authority for the well-established rule that this function is for the trial court, whose determination binds us when, as in this case, it is supported by substantial evidence.

The trial court instructed the jury that if plaintiff suffered damage, it was to be measured by the depreciation in market value of the land, and that cost of removal of the materials, if any, deposited on plaintiff's land could be considered only if it did not exceed the diminution of market value. Plaintiff asserts error in this instruction. He contends that cost of removal of material wrongfully deposited on his land is the proper measure of damages, even if there were no depreciation in market value. Defendant argues that the rule urged by plaintiff is inapplicable in an action in inverse condemnation.

We find it unnecessary to determine this question, since it is obvious that the jury never reached it. Two special interrogatories were submitted to the jury: "(1) Was the real property of the plaintiff . . . damaged by the defendant, . . . for a public use," and "(2) If so, what is the amount of the depreciation in market value, if any, to the plaintiff's property . . ." Had the jury answered "yes" to the first question and "none" to the second, the instructions as to measure of damages would become important.

But the jury, in answering "no" to the first interrogatory, found that no injury occurred. We have examined the instructions in detail, and find nothing which could conceivably mislead the jury as to the liability of defendant. On the contrary, the court carefully defined to the jury "normal" and "additional" erosion, and told the jury that the state is liable for any additional erosion of materials proximately caused by the highway or its construction to be "carried down by winter rains . . . and deposited on the lands of" plaintiff. The instructions as to measuring that damage in money were wholly distinct. ▮▮ The conclusion is inescapable that the jury, uninfluenced by any instruction on assessment of damages, found that no injury was suffered by plaintiff. Clearly, such injury is an essential predicate to any recovery by plaintiff. Thus the instruction as to measure of damages had no possible effect upon the result, and could not constitute reversible error.

▮ Appellant also asserts error in admission, over his objection, of four exhibits. One is the dredging plan for construction of the Marinship yard, showing planned depth of the channel, slipways and turning basin, dated September 2, 1942. The other three purport to show soundings in the dredged area after completion of the dredging work in November 1942. Although the documents were introduced

through the chief of the operations division, United States Army Engineers, there is grave doubt that they qualify as business records (Code Civ. Proc., §§ 1953e-1953h). Whether they are admissible under any of the rules relating to government records (Code Civ. Proc., §§ 1918, subd. 9, 1920, 1926 or 1936) also is arguable upon the foundation here laid. However, we have concluded that even if the evidence were inadmissible, it resulted in no prejudice to appellant.

The purpose of the evidence was to show a pattern of shoaling of the bay in this area, thus supporting defendant's theory that the filling of plaintiff's land resulted from such shoaling, rather than from runoff of material from the highway area. A like dredging plan was admitted, without objection, as part of the Army Engineers' permit for the Marinship dredging. Plaintiff himself testified to depths substantially conforming to those detailed in the three exhibits showing soundings taken after completion of the dredging job. Also, clearly admissible charts showing soundings in 1947, 1950, 1953 and 1955 were admitted. These exhibits show shoaling at a substantially constant ratio, whether the starting point be 1942 or 1947. The 1942-1947 period neither strengthened nor weakened the theory of defendant's experts that the constant and normal filling of this area of the bay, wholly independent of runoff from the hills, accounts for the filling of plaintiff's land. Evidence that is merely cumulative of evidence properly before the jury is not prejudicial (*Long* v. *California-Western States Life Ins. Co.*, 43 Cal.2d 871, 878 [279 P.2d 43] ; *Ferris* v. *Emmons*, 214 Cal. 501, 506 [6 P.2d 950]).

Further, the evidence as to shoaling is but one facet of defendant's denial that it caused the filling of plaintiff's land. The basic question was whether soil was in fact washed from slopes of the 1953-1955 cuts and fills in such quantities as to reach plaintiff's land and cause damage. While the expert testimony on this issue conflicted, the jury visited the site and viewed the slopes, thus being able to judge for itself whether the degree of erosion from the 156-acre watershed was sufficient to cause the result complained of. On the whole record, we are satisfied that admission of the four exhibits did not prejudice plaintiff.

Judgment affirmed.

Salsman, J., and Devine, J., concurred.

A petition for a rehearing was denied February 9, 1962, and appellant's petition for a hearing by the Supreme Court was denied March 14, 1962.